Robert F. Brennan, Esq. [S.B. #132449]
**LAW OFFICES OF ROBERT F. BRENNAN, A P.C.**
2103 Montrose Ave., Suite D
Montrose, Ca. 91020
Phone [818] 249-5291, Fax [818] 249-4329
Email: rbrennan@brennanlaw.com

Stephanie R. Tatar, Esq. (S.B.237792)
TATAR LAW FIRM, APC
3500 West Olive Avenue Suite 300, Burbank, CA 91505
Phone: (323) 744.1146, Fax 323.967.7775

E-mail: stephanie@thetatarlawfirm.com

Attorney for: Plaintiffs: Anthony W. and Martha C. Luckert

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTHONY W. and MARTHA C. LUCKERT, Individuals,<br><br>Plaintiffs,<br><br>vs.<br><br>TESLA ENERGY OPERATIONS, INC, a business entity, form unknown; EQUIFAX INFORMATION SERVICES, LLC, and DOES 1-10, Inclusive,<br><br>Defendants. | Case No.: 3:21-cv-3027<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. FAIR CREDIT REPORTING ACT<br><br>**Jury trial demanded.** |

Plaintiffs allege:

    1. Plaintiffs Anthony W. and Martha C. Luckert ("Plaintiffs") are residents of Bellingham, Washington.

COMPLAINT FOR DAMAGES     1

2. Defendant TESLA ENERGY OPERATIONS, INC ("TESLA") is a company, which among other activities, reports allegedly delinquent debts to credit bureaus and is a "furnisher" under the Fair Credit Reporting Act.

3. Defendant EQUIFAX INFORMATION SERVICES LLC ("EQUIFAX), is a business entity, form unknown, doing business in the State of California as credit bureau which receives negative credit information about consumers and which then publishes such information in credit reports available to its subscribers.

4. Defendants DOES 1-10 are individuals and business entities, form unknown, doing business in the State of California as credit reporting agencies, debt collection agencies, creditors or other persons or entities which engage in credit reporting and/or debt collection. DOES 1-10, Inclusive, includes individuals or business entities doing business in the State of California as credit reporting agencies, debt collectors and/or creditors who have refused to delete accounts of Plaintiffs that were procured through identity theft, mixed file or other manner of recording an inaccurate credit account, even after Plaintiffs have notified them of the false or inaccurate derogatory, and also who have reported such accounts as derogatory credit references to credit reporting agencies.

5. Plaintiffs do not know the true names and capacities, whether corporate, partnership, associate, individual or otherwise of Defendants sued herein as Does 1 through 10, inclusive. Plaintiffs are informed and believe and on that basis allege that Defendants Does 1 through 10, inclusive, are in some manner responsible for the acts, occurrences and transactions as officers, directors or managing agents of Defendants or as its agents, servants, employees and/or joint venturers and as set forth in this complaint, and that each of them are legally liable to Plaintiffs, as set forth below and herein:

a) Said Officers, directors or managing agents of Defendants personally acted willfully with respect to the matters alleged in this complaint;

  b) Said officers, directors or managing agents of Defendants personally authorized, approved of, adopted and/or ratified the acts alleged herein or the agents, servants, employees and/or joint venturers of Defendants did so act;

  c) Said officers, directors or managing agents of Defendants personally participated in the acts alleged herein of Defendants;

  d) Said Officers, directors or managing agents of Defendants personally had close supervision of their agents, servants, employees and/or joint venturers of Defendants;

  e) Said Officers, directors or managing agents of Defendants personally were familiar with the facts regarding the matters alleged herein;

  f) Said Officers, directors or managing agents of Defendants personally failed to investigate the circumstances appertaining to the acts alleged herein. They also failed and refused to repudiate the herein alleged actions and failed to redress the harm done to Plaintiffs.  Further, said Officers, directors, or managing agents of Defendants failed and refused to punish or discharge the said agents, servants, employees and/or joint venturers of Defendants, even after learning of the acts of the agents, servants, employees and/or joint venturers of Defendants. Plaintiffs will seek leave to amend this complaint to set forth the true names and capacities of said fictitiously named Defendants as enumerated above, together with appropriate charging allegations, when learned.

  6. Plaintiffs are informed and believe, and thereon allege that at all relevant times herein each Defendant, whether actually or fictitiously named, was the principal, joint venturer, agent, servant or employee of each other Defendant, and in acting as such within the course, scope and authority of such relationship, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiffs for the relief prayed for in this complaint, and any future amended complaint.  Further, Plaintiffs allege that each act alleged herein,

whether by a named Defendants or fictitiously named Defendants or otherwise, was expressly authorized or ratified by each and every other Defendant herein, whether named or fictitiously named.

## FIRST CAUSE OF ACTION
## [VIOLATION OF THE FAIR CREDIT REPORTING ACT
## AGAINST ALL DEFENDANTS]

7. Plaintiffs re-allege and incorporate all preceding paragraphs as though set forth in full in this cause of action.

8. Plaintiffs are consumers as this term is defined by 15 U.S.C. Sec. 1681a(c) of the Fair Credit Reporting Act. All defendants are "furnishers" as defined by 15 U.S.C. 1681s-2 of the Fair Credit Reporting Act, except, EQUIFAX who is a "consumer reporting agency" as that term is defined in 15 U.S.C. Section 1681a (f).

9. On or about May 10, 2014, Plaintiffs signed an agreement to have solar panels installed on their home in Upper Marlboro, Maryland. The terms of this agreement were under a "Power Purchase Agreement" (PPA), where they did not own any of the equipment, and instead paid SolarCity (TESLA) for energy produced from the panels at a pre-arranged rate per Kilowatt Hour ($10.90), similar to the electric company. *This was not a loan.* The PPA agreement provides: "You understand and agree that this PPA is not a contract to sell or lease the System to you. SolarCity owns the System for all purposes, including any data generated from the System." Plaintiffs chose this type of arrangement to ensure that the solar system would not reflect on their debt-to-income ratio or appear on their credit report as they manage these carefully.

10. On or about June 15, 2020, Plaintiffs discovered that EQUIFAX was reporting a TESLA debt account on Mr. Luckert's credit report.

11. Given that Plaintiffs' account is not in arrears, there should be no report made to the credit reporting agencies setting forth the sums due. Furthermore, the information submitted to the credit reporting agencies (stating a high credit balance of $41,173) is inaccurate and misrepresents Plaintiffs' credit standing with TESLA and as result disparages Plaintiffs' credit rating.

12. On or about October 18, 2020, Plaintiff A. Luckert disputed on-line at the EQUIFAX dispute portal.

13. On or about November 2, 2020, Plaintiff A. Luckert received a reply from EQUIFAX, Confirmation #0292003353, stating the TESLA account was reporting accurately and would remain unchanged. The TESLA account would continue to appear as Status: Pays as Agreed; Type of Account: Installment; Type of Loan: Unsecured; High Credit Amount: $41,173.

14. This has damaged Plaintiffs by reducing their credit score, causing Home Depot to reduce their credit score and ultimately closing their Home Depot account, and by threatening to prevent Plaintiffs from securing a loan for their dream home. In December 2020, Plaintiffs moved to Bellingham, Washington, where they found a nice piece of land where they are trying to build a house but have been having issues securing a new construction loan as the TESLA "loan" is still being reported as an open loan throwing their debt-to-income ratio off. They have had to resort to renting a small trailer 45 minutes away from Plaintiff A. Luckert's office to be able to financially support both the contract on the land as well as having a place to live. Plaintiffs are now running out of time to secure a loan and may lose the land after already paying $54,000 into it. Plaintiff M. Luckert has been very sick and depressed by the prospect of losing the land they were trying to purchase for their home. Having their borrowing power reduced because of the TESLA debt appearing on their EQUIFAX credit report, particularly during these unsettling times, has brought on a significant amount of

stress, anxiety and aggravation, extreme frustration and emotional upset, leading to sleepless nights.

15. On information and belief, EQUIFAX sent dispute notices to TESLA thereby activating TESLA'S obligations to Plaintiffs under the Fair Credit Reporting Act.

16. Plaintiffs complied with all requests of each of the Defendants to provide information in order to have the erroneous marks removed from their credit profile. Despite the insistence of Plaintiffs, the Defendants, and each of them, failed to correct the errors and failed to undertake sufficient investigations upon being notified of the errors.

17. Within the past several years, Defendants, and each of them, willfully violated the provisions of the Fair Credit Reporting Act in *at least* the following respects:

   a. By willfully and negligently failing, in the preparation of the consumer report concerning Plaintiffs, to follow reasonable procedures to assure maximum possible accuracy of the information in the report;

   b. By willfully and negligently failing to correct, after receiving ample notice, information about the Plaintiffs which defendants knew, or should have known, was incomplete and/or inaccurate;

   c. By willfully and negligently failing to correct and/or delete the incomplete and inaccurate information in Plaintiffs' file after conducting an investigation;

   d. By willfully and negligently failing to conduct a reasonable investigation of Plaintiffs' complaints, and by willfully and negligently failing to implement corrective actions once the outcome of such investigations were known, or should have been known, to the defendants; and,

   e. By willfully and negligently failing to provide subsequent users of the

report with the Plaintiffs' statement of dispute or a summary thereof.

18. As a proximate result of the actions of the Defendants, and each of them, Plaintiffs have been damaged in an amount which will be proven at time of trial. Plaintiffs spent hours researching and evaluating the contracts for their solar system very specifically so that they would not have to carry any debt. When the TESLA account hit their credit report years after the contract was signed, it was very surprising and disturbing, causing Plaintiffs to be very stressed and anxious. Plaintiffs have lost sleep and have serious anxiety and concern at having their credit negatively impacted. Specifically, Plaintiffs have been damaged by the improper reporting of total outstanding debts, and debt-to-income ratios, affecting their financial future and wellbeing. As provided under the cited law, Plaintiffs are entitled to actual damages, pain and suffering, punitive damages, penalties, costs and attorney fees.

19. Plaintiffs allege that defendants, and each of them, have willfully violated FCRA with respect to Plaintiffs and towards others similarly situated. Specifically, defendants placed a large debt owing on Plaintiff A. Luckert's EQUIFAX credit report when there was no debt owing. This large debt damaged Plaintiffs' credit standing and credit scores. Plaintiffs gave defendants ample opportunities to correct their mistake, but defendants, and each of them, have willfully refused to remove the alleged debt from Plaintiffs' EQUIFAX credit report. Slapping a large debt on a consumers' credit report is nothing but a pressure tactic to force consumers to repay debts they do not owe, and defendants have done this deliberately to coerce Plaintiffs, and other consumers, into repaying debts they do not owe. Furthermore, Plaintiffs allege that TESLA and DOES 1-10, Inclusive, made the decision to inflict large debts upon its solar customers' credit reports as an accounting ploy to falsely increase the balance-sheet assets of the company. In addition to general and special damages according to proof,

Plaintiffs also seek an assessment of punitive damages against TESLA and DOES 1-25, Inclusive.

WHEREFORE, Plaintiffs prays for judgment as follows:
1. For general and special damages according to proof at trial;
2. For statutory penalties for each separate statutory violation where allowed by statute;
3. For punitive damages against defendants according to proof at trial and using the applicable punitive damages standards from the involved statutes;
4. For attorney's fees where authorized by statute or law;
5. For costs of suit; and
6. For such other relief as the court deems just and proper.

**PLAINTIFFS DEMAND A JURY TRIAL**

Dated: April 26, 2021        **LAW OFFICES OF ROBERT F. BRENNAN, P.C.**

By: /s/ Robert F. Brennan _____
Robert F. Brennan
Attorneys for Plaintiffs